IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2014

**YONI SALES BARAHONA v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-553     J. Randall Wyatt, Jr., Judge**

_____

**No. M2014-00415-CCA-R3-PC - Filed February 4, 2015**

_____

The Petitioner, Yoni Sales Barahona, appeals from the denial of post-conviction relief by the Criminal Court for Davidson County. He was convicted of aggravated assault and sentenced to ten years' imprisonment in the Tennessee Department of Correction. On appeal, the Petitioner argues that he received ineffective assistance of counsel at the appellate level. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Petitioner, Yoni Sales Barahona.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Brian M. Ewald, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction arose from the stabbing of the victim, Jose Aguilar-Varagas, on November 21, 2009, at a night club in Nashville. After a jury trial, the Petitioner was convicted as charged of aggravated assault. He was subsequently sentenced as a Range II, multiple offender to ten years' incarceration. See State v. Yoni Sales Barahona, No. M2011-01300-CCA-R3-CD, 2012 WL 3291799 (Tenn. Crim. App. Aug. 13, 2012), perm. app. denied (Tenn. Jan. 14, 2013). In its opinion on direct appeal, this court summarized the evidence as follows:

At trial, club owner and manager Oscar Membreno testified that on November 21, 2009, he saw "a group of people that were fighting inside the club," so he went outside to call the police. As he left, he "saw a young man that had a knife in his hand" and another individual "screaming that he had been cut or stabbed." Mr. Membreno identified the [Petitioner] as the person he had seen with a knife. He said that he did not see any other individual with a knife that night. He also identified a knife produced by the State as the knife police recovered from the women's restroom inside the night club on November 21, 2009. Mr. Membreno said that he saw "[t]he one that was bleeding" identify the [Petitioner] as the person who had stabbed him.

During cross-examination, Mr. Membreno said that there were approximately 60 people in the night club when the fight broke out among the 25 or so people who were standing near the pool tables. He testified that he employed two bouncers, but he had sent both home by the time the fight erupted. As a result, there were some people who had been permitted to enter the establishment without being searched for weapons. Mr. Membreno clarified that he did not see the [Petitioner] threaten anyone with the knife. He acknowledged that after the stabbing, the "friends of the wounded man" went outside and returned with "a machete." He said that the victim left the bar but returned when police arrived. He conceded that he did not see the [Petitioner] go into the women's restroom and that he had only seen the "silver" part of the knife that the [Petitioner] held. He said that he could not be sure that the knife recovered by police was the knife he saw in the [Petitioner]'s hand.

Emergency room physician Doctor John Nixon testified that he treated the victim for "what appeared to be a superficial stab wound right below the naval."

Investigator Hugh Coleman of the Davidson County District Attorney General's Office testified that he was asked to locate the victim, Jose Oscar Aguilar-Varagas. He said that he consulted several databases using various spellings and word combinations similar to the victim's name along with similar dates of birth to obtain information relative to the victim. Utilizing the information he found, he traveled to several addresses that had been associated with the victim. Despite his efforts, he was not able to locate the victim.

At that point, the recording of the victim's preliminary hearing testimony was played for the jury. During that testimony, the victim testified that he had gone to the Oasis night club "to pick up some money" from a man

-2-

he had been working for. He said that the [Petitioner] came up to him and asked him if he "belong[ed] to a marra." The victim said that when he told the [Petitioner] that he did not "belong to any marra," the [Petitioner] told the victim that he did and then "lifted up his shirt like this." In response, the victim lifted his own shirt, and the [Petitioner] said, "[O]h well that's pretty nice then." The victim then walked away from the [Petitioner] heading toward the restroom. At that point, the [Petitioner], who had pulled a knife, came toward the victim's cousin. The victim said that he "pushed [his] cousin aside," and the [Petitioner] stabbed him. He testified that he went outside the bar after being stabbed. The victim denied being a member of any gang. The victim said that he consumed only part of a single beer prior to the altercation and that the [Petitioner] did not appear to be intoxicated.

During cross-examination, the victim claimed that his employer instructed him to come to the diner adjoining the night club to get paid. He said that he did not talk to the [Petitioner] for very long and that he did not know the meaning of the word "marra," which apparently referenced gang membership. The victim said that he was at the club with his cousin, a friend, and a man whose name he did not know. He said that none of his companions was armed with a machete.

Metro Police Department Officer Clifton Huffmaster testified that he traveled to the Oasis night club in response to a call that an armed person was located on the premises. When he arrived, Mr. Membreno, who was waiting outside, told him that "there had been a stabbing and a fight and that the person who had done the stabbing was still inside of the night club." Once inside the establishment, Mr. Membreno identified the [Petitioner] as the perpetrator, and officers took the [Petitioner] into custody. Officer Huffmaster described the scene as "somewhat chaotic" and the patrons that remained at the bar as "still quite rowdy." He said that although the victim was not at the night club when officers first arrived, the victim "returned to the scene and identified the [Petitioner] as the [one] who had stabbed him." Officer Huffmaster testified that the victim had a puncture wound in his abdomen and that his shirt was bloody. Accordingly, he summoned an ambulance, and the victim was taken to the hospital. Officer Huffmaster said that officers discovered a knife inside the restroom at the night club. He could not say, however, that the knife recovered by officers was the weapon used to stab the victim. He did not see any blood on the [Petitioner]'s person.

-3-

Detective Brandon Dozier, who was the lead investigator in the case, testified that by the time he arrived on the scene on November 21, 2009, patrol officers had taken control of the scene, the [Petitioner] was handcuffed in the back of a patrol car, and the victim had been taken to the hospital. He spoke briefly with the witnesses at the scene and with the [Petitioner] before going to the hospital to speak with the victim. Because the victim did not speak English, Detective Dozier "wasn't able to really speak to him" but did observe "injuries consistent with" descriptions provided at the scene. He said that the hole in the victim's shirt was consistent with the blade of the knife recovered at the scene. As part of his investigation, he photographed the [Petitioner] to confirm the victim's description of the [Petitioner]'s tattooed abdomen.

Id. at *1-2. On direct appeal, this court noted that the Petitioner alleged twenty-one separate assignments of error, although "[s]ome of these issues ha[d] been waived, and others [we]re redundant." Id. at *1. This court concluded that six claims merited appellate review:

(1) the trial court erred by admitting into evidence the transcript of the victim's preliminary hearing testimony, (2) the trial court erred by denying his motion to suppress, (3) the trial court erred by admitting into evidence the in-court and out-of-court identifications of the [Petitioner] by both the victim and Mr. Membreno, (4) the trial court erred by admitting into evidence the knife recovered from the scene, (5) the evidence is insufficient to support his conviction, and (6) the trial court erred by imposing a fully incarcerative 10-year sentence.

Id. at *3. Ultimately, this court concluded that the Petitioner had waived many of his claims for failure to cite to authority or to the record and accordingly affirmed the Petitioner's conviction and sentence. The Tennessee Supreme Court denied his application for permission to appeal.

On May 1, 2013, the Petitioner filed a timely pro se petition for post-conviction relief, alleging six claims for relief based on ineffective assistance of counsel. He subsequently filed an amended petition with the assistance of counsel on November 15, 2013. The post-conviction hearing occurred on December 17, 2013.[1]

**Post-Conviction Hearing.** The Petitioner testified that he was convicted by a jury of aggravated assault and sentenced to serve ten years at thirty-five percent. He recalled

---

[1] On appeal, the Petitioner raised only the single issue of ineffective assistance of counsel. Accordingly, we only address testimony from the hearing relevant to this issue.

counsel advising him that he could receive a maximum sentence of ten years. He stated that counsel had mentioned a plea offer but that counsel said "he was ready to go to trial." The Petitioner testified that he was also ready to go to trial. He said he did not want to testify at trial. He received a copy of his appellate brief but claimed that he could not make any suggestions because the brief had already been filed.

On cross-examination, the Petitioner acknowledged that at the time of trial, he had a pending federal case for illegal re-entry. He agreed that it was his choice to give up his right to testify at trial. The Petitioner stated that there were many evidentiary errors at trial, though he could not specify the issues that counsel should have included in the appeal. He acknowledged that counsel raised twenty-one errors in the motion for new trial, but he did not know what issues were included.

The State called counsel after the close of the Petitioner's proof. Counsel testified that he was licensed to practice law in 2005 and that about half of his practice was devoted to criminal law. He said that he frequently met with the Petitioner and that they also communicated by mail because the Petitioner was "a very avid letter writer[.]" Counsel did not have any difficulty communicating with the Petitioner, but he used an interpreter to ensure that the Petitioner understood his legal rights. He said that the State offered the Petitioner three years but the Petitioner was "really concerned" about his federal charge and did not want a felony conviction. According to counsel, the Petitioner "insisted on going to trial."

While preparing for trial, counsel was aware of the State's difficulties in locating the victim. He recalled filing multiple motions to suppress based on the unavailable witness. Counsel sought to prevent the State from introducing the victim's prior testimony from the preliminary hearing as well as any subsequent in-court identifications made by the victim. Although the motions were denied, counsel said he renewed his objections against the introduction of the preliminary hearing transcript at trial and on appeal.

On cross-examination, counsel conceded that the Court of Criminal Appeals considered many of his issues to have been waived on direct appeal. He agreed that one of the waived issues included whether the State used due diligence in locating the victim before introducing the victim's prior testimony. Counsel recalled that at the suppression hearing, the trial court concluded that the State had used due diligence. He agreed that the victim's prior testimony was "pivotal," but he did not believe it was essential to the State's case because there were other eyewitnesses who had testified.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On February 12, 2014, the court entered a written order denying relief. The Petitioner timely appealed the post-conviction court's order.

## ANALYSIS

On appeal, the Petitioner argues that counsel was ineffective at the appellate level by failing to preserve the issue of the admissibility of the victim's prior testimony from the preliminary hearing. He contends that counsel's failure to cite to authority and to the record unduly prejudiced his case because the issue was not properly addressed on appeal. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he was prejudiced by counsel's alleged deficiency. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution

-6-

and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the evidence establishes that the attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). This two-prong Strickland test applies to claims of ineffective assistance of counsel at either the trial or appellate levels. See Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995) (citing Evitts v. Lucey, 469 U.S. 387 (1985)). In other words, a petitioner alleging ineffective assistance of appellate counsel must prove both the unreasonable performance of counsel on direct appeal and actual prejudice resulting from that performance. Id.

We note that "[a]ppellate counsel are not constitutionally required to raise every conceivable issue on appeal." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004) (citing King v. State, 989 S.W.2d 319, 334 (Tenn.1999); Campbell, 904 S.W.2d at 596-97). In Carpenter v. State, the Tennessee Supreme Court applied the following analysis to claims based on counsel's failure to raise certain issues on appeal:

If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Obviously, if an issue has no merit or is weak, then appellate

-7-

counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. See United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993).

Id. at 887-88.

In its order denying relief, the post-conviction court specifically held that the Petitioner failed to establish prejudice based on counsel's representation on appeal:

The Petitioner contends that [counsel] was ineffective in failing to adequately brief the issue regarding the Court's denial of his motion to suppress the preliminary hearing transcript. According to the Petitioner, [counsel] waived the issue on appeal by failing to cite any authority in support of his argument and neglecting to provide appropriate references to the record. The Court finds that the Court of Criminal Appeals did deem the issue waived based on [counsel]'s failure "to support his claim with citation to relevant authorities and completely failed to provide any appropriate references to the record in his argument." State v. Barahona, M2011-01300-CCA-R3-CD, 2012 WL 3291799 (Tenn. Crim. App. Aug. 13, 2012). However, the Court finds that the there was no proof presented that there is a reasonable probability that the outcome of the appeal would have been different had [counsel] adequately briefed this specific issue. Therefore, the Court finds that the Petitioner failed to satisfy the second prong of the Strickland analysis as to this issue, and that the issue is therefore without merit.

We conclude that the record fully supports the post-conviction court's determination that the Petitioner failed to establish that counsel was ineffective for failing to properly preserve the issue regarding the preliminary hearing transcript. In his brief, the Petitioner asserts that "[w]ithout being able to introduce this evidence, the State would have been unable to proceed against the [Petitioner] at trial, and his case would have been dismissed." Apart from this bare assertion, the Petitioner has failed to argue this issue. At the evidentiary hearing, the Petitioner did not present any proof or argument to establish a reasonable probability that the proper briefing of the preliminary hearing issue would have resulted in a different outcome.

Initially, as a general rule, "the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion

unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). Moreover, Rule 804(b)(1) of the Tennessee Rules of Evidence provides that the former testimony of an unavailable declarant is admissible where the opposing party had the opportunity to cross-examine the witness. Tenn. R. Evid. 804(b)(1). Finally, apart from the victim's identification of the Petitioner, club owner Oscar Membreno testified at trial that he observed the Petitioner with "a knife in his hand" and that he was present when the victim identified the Petitioner as the assailant.[2] Accordingly, the Petitioner has made an insufficient showing that he suffered prejudice due to counsel's alleged deficiencies. See Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Although he faults counsel for failing to preserve the issue of the preliminary hearing transcript for appeal, the Petitioner has not demonstrated that but for counsel's failure to adequately brief the issue, the outcome of the proceeding would have been different. Here, the record fully supports the post-conviction court's holding that the Petitioner failed to establish prejudice. Because the Petitioner has made an insufficient showing of prejudice, we need not address the issue of deficiency. See Goad, 938 S.W.2d at 370 (citing Strickland). The Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

---

CAMILLE R. McMULLEN, JUDGE

---

[2] As this court noted on direct appeal:

> The record establishes that immediately after officers arrived on the scene at the night club, Mr. Membreno led them inside and identified with certainty the [Petitioner] as the person who had possessed a knife during the fight. Mr. Membreno testified at trial that the fight occurred near the pool tables, a well-lit area of the night club. The totality of the circumstances thus supports a finding that Mr. Membreno's identification of the defendant was not unduly suggestive. Indeed, because it was orchestrated entirely by Mr. Membreno himself, the identification was not suggestive at all.

Yoni Sales Barahona, 2012 WL 3291799, at *6.